UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RANDALL AND JANICE DISHMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 6: 07-299-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY CO., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant State Farm Fire & Casualty Company's ("State Farm") motion for summary judgment. [Record No. 32] State Farm alleges that there are no disputed facts regarding *pro se* Plaintiffs Randall and Janice Dishman's ("Dishmans") claims for breach of contract and bad faith. [Record No. 1] For the reasons discussed herein, the Court agrees and will grant State Farm's motion.

**I.   BACKGROUND**

The Dishmans filed this action following a fire on November 11, 2006, that completely destroyed their home in Wayne County, Kentucky. The Dishmans had purchased this home in either 1990 or 1991 for approximately $49,000. At the time of the fire, they owed approximately $61,000 on the home, based on an initial mortgage and subsequent loans for improvements. Until 1996, the home was insured through Proctor Rankin Insurance Company ("Proctor Rankin"), a local insurance broker for Kentucky Growers Insurance Company ("Kentucky

Growers"). However, following a garage fire in 1995, Randall Dishman asserts that he was informed by Proctor Rankin that his insurance would either be canceled or increased by $600 to $700 per year.

According to affidavits from Bob Ammerman ("Ammerman"), Corporate Secretary for Kentucky Growers, the Dishmans' insurance was threatened with neither cancellation nor increased rates; instead, the policy was completely canceled in 1996 "as a result of an unacceptable claims record." [Record No. 32] Ammerman stated that a letter was sent to Proctor Rankin in November 1996 informing the broker of the policy cancellation. A few weeks later, Kentucky Growers sent a letter directly to the Dishmans regarding an application filed by Proctor Rankin on behalf of the Dishmans for insurance on a Kawasaki four-wheeler. The letter stated that the Dishmans' application for insurance on the four-wheeler was declined because their homeowner insurance policy was not being renewed. This letter appears to be the only information in the record showing that the Dishmans were informed of the cancellation of their first insurance policy. Randall Dishman testified that he does not recall being told that his policy would not be renewed.

At State Farm, Randall Dishman met with independent agent Kenneth Ramsey ("Ramsey"). Ramsey asked Dishman questions from the homeowner's insurance application and filled-out the application according to Dishman's answers. Randall Dishman expressed his dissatisfaction with Proctor Rankin to Ramsey; however, he testified that he did not tell Ramsey about the insurance policy cancellation because he had no knowledge of it. [Record No. 32]

State Farm issued the Dishmans a homeowner's insurance policy effective October 1999. The policy provided coverage of $81,539 for the dwelling with a dwelling extension of $8,254.

At the time of the 2006 fire, the Dishmans were in Lexington, Kentucky, on a family trip. They arrived home after they were informed of the fire by Randall Dishman's mother. Thereafter, the Dishmans submitted a claim to State Farm for the home and its contents in the total amount of $164,893.78. State Farm investigated the claim through recorded statements and examinations under oath with the Dishmans. The company also gathered information on the Dishmans' financial, court, tax, and utility records, "in part . . . to determine if [the Dishmans] may have had a financial motive to submit a fraudulent insurance claim given that the fire was arson." [Record No. 32]

The record contains numerous statements by the Dishmans in reference to their utility bills, taxes, cell phone bills, credit applications, loan applications, and bankruptcy. State Farm alleges that these statements – in addition to Randall Dishman's statement to Ramsey regarding the cancellation of the Kentucky Growers insurance policy – were factually inaccurate. After uncovering these inaccuracies, State Farm denied the Dishmans' claim in June 2007. In August 2007, the Dishmans filed a Complaint against State Farm in the Wayne Circuit Court alleging breach of contract, violation of the Kentucky Unfair Claims Settlement Practices Act, K.R.S. 304.12-230, and violation of the Consumer Protection Law. [Record No. 1] The case was timely removed to this Court.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those materials in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Additionally,

a federal court sitting in diversity must apply the law of the forum state of the claims asserted. *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005).

### III. ANALYSIS

#### A. Breach of Contract Claim

State Farm argues that it is not obligated to pay the Dishmans' insurance claim for the fire because of: (1) a misrepresentation made by Randall Dishman on the initial application for insurance; and (2) misrepresentations made by the Dishmans during the course of the investigation of the claim. With respect to the first alleged misrepresentation, Kentucky law provides that:

> Misrepresentations, omissions, and incorrect statements [in an application for an insurance policy] shall not prevent a recovery under the policy or contract unless either: (1) fraudulent; or (2) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

K.R.S. § 304.14-110.

In essence, "[w]hen an insured misrepresents material facts on the application, the insurer is justified in denying coverage and rescinding the policy." *Hornback v. Bankers Life Ins. Co.*, 176 S.W.3d 699, 705 (Ky. Ct. App. 2005). In another explanation of the statute, the Sixth Circuit has stated that "[t]he rule is that a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated

therein." *Cook v. Life Investors Ins. Co. of Am.*, 126 Fed. App'x 722, 724 (6th Cir. 2005) (quoting *Mills v. Reserve Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960). The dispositive question here is whether a misrepresentation made unknowingly still triggers the statute. Kentucky courts answer this question in the affirmative. *Globe Indem. Co. v. Daviess*, 47 S.W.2d 990, 994 (Ky. 1932); *Ford v. Commw. Life Ins. Co.*, 67 S.W.2d 950, 950 (Ky. 1934); *State Farm Mut. Auto. Ins. Co. v. Crouch*, 706 S.W.2d 203 (Ky. App. 1986). "[R]epresentations made to an insurance company which are false and material to the risk will defeat recovery on the policy issued thereon even though they were made innocently; the matter of good faith on the part of the applicant being a thing apart." *Ford*, 67 S.W.2d 950 at 950.

State Farm alleges that, when asked by Ramsey whether an insurer or agency had canceled or refused to issue or renew homeowner's insurance to the Dishmans, Randall Dishman answered in the negative. Yet, the affidavits of Ammerman and a letter from Kentucky Growers establish that the Dishmans' homeowner insurance policy was terminated in 1996, three years before the Dishmans applied for State Farm insurance. In his deposition, Randall Dishman admitted that he did not inform Ramsey of the cancellation. Further, in the Dishmans' brief, they argue that he "did not purposely [sic] give false information" regarding the insurance policy application. [Record No. 35]

It is unclear whether the Dishmans actually knew of the cancellation, but they did receive correspondence regarding it. In any case, their intentions and knowledge are immaterial because Kentucky courts have held that even innocent misrepresentations are misrepresentations for the

purposes of K.R.S. § 304.14-110. Additionally, the Dishmans offer no evidence showing that the statement was not an incorrect statement.

Finally, the parties do not dispute that the policy would not have issued had Randall Dishman accurately stated that his Kentucky Growers insurance policy was canceled. Ammerman stated that State Farm would not have issued the Dishmans a homeowner policy if Ramsey had been informed of the Kentucky Growers insurance cancellation. [Record No. 32] Therefore, the elements of K.R.S. § 304.14-110 are satisfied and the Dishmans have not presented any evidence upon which a jury would be able to find that the Dishmans were entitled to the insurance claim. State Farm is entitled to summary judgment on the Dishmans' breach of contract claim under this statutory provision  As a result, the Court finds it unnecessary to address State Farm's argument concerning the alleged misrepresentations made by the Dishmans during the course of the claim investigation.

### B. Bad Faith Claims

To prevail on their bad faith claims, the Dishmans must establish that:

(1) The insurer must be obligated to pay the claim under the terms of the policy; (2) The insurer must lack a reasonable basis in law or fact for denying the claim; and (3) It must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed[.]

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). "Liability for bad faith will arise only in those instances where an insurer acts with some degree of conscious wrongdoing, reckless [sic] or in a manner which reveals an unjustified gamble at the stake of the insured." *Matt v. Liberty Mut. Ins. Co.*, 798 F. Supp. 429, 434 (W.D. Ky. 1991) *aff'd*, 968 F.2d 1215 (6th Cir. 1992).

The Court has already determined that the second element listed above counsels in favor of State Farm. That is, State Farm had a reasonable basis in law for denying the Dishmans' claim under K.R.S § 304.14-110. The Dishmans have not offered any evidence of State Farm's conscious wrongdoing or recklessness, aside from questioning State Farm's categorization of the fire as an arson and the subsequent investigation into the Dishmans' financial records. The Court makes no judgment on these issues. The Court's decision is based only on the Dishmans' failure to offer evidence negating State Farm's evidence of Randall Dishman's inaccurate statement in his application for insurance.

> [A]n insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is contractually obligated to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.

*Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). Because K.R.S. § 304.14-110 eliminates State Farm's contractual obligation to pay the Dishmans' insurance claim, their bad faith claim cannot stand. Accordingly, the Dishmans' Kentucky Unfair Claims Settlement Practices Act ("UCSPA") and Consumer Protection Law claims are also without support. "A cause of action for a violation of the UCSPA may be maintained only where there is proof of bad faith of an outrageous nature." *Hamilton Mut. Ins. Co. of Cincinnati v. Buttrey*, 220 S.W.3d 287, 293 (Ky. Ct. App. 2007). No such proof has been offered.

**IV.    CONCLUSION**

State Farm is entitled to avoid the Dishmans' insurance claim under K.R.S. § 304.14-110, therefore defeating their claims for breach of contract and bad faith. Accordingly, it is hereby

**ORDERED** that Defendant State Farm's motion for summary judgment [Record No. 32] is **GRANTED**. The motion to strike the Plaintiffs' reply [Record No. 39] is **DENIED**, as moot.

This 30th day of October, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge